IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| BRENT ALAN McLEAN, #663292 | § | |
| VS. | § | CIVIL ACTION NO. 6:07cv31 |
| CECIL HASTY, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Brent Alan McLean, a prisoner confined at the Powledge Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on January 16, 2007. The Plaintiff alleged that he had been the victim of deliberate indifference to his medical needs and retaliation. On May 24, 2007, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Chip Satterwhite, Assistant Warden Wesley Pratt and Nurse Barbara Hughes testified under oath about prison policies and information contained in the Plaintiff's prison records.

The Plaintiff was injured while working in the soap room of the Powledge Unit kitchen on July 13, 2006. He was injured while dispensing liquid soap from a 55 gallon barrel. Previously, on October 27, 2005, Food Services Manager Cecil Hasty had issued an Inter-Officer Communication ("IOC") specifying that chemical dispensing pumps are to be used when removing liquid chemicals. The Plaintiff testified that the Powledge Unit did not have a pump that worked, thus he had to tip the barrel in order to pour soap into a two gallon bucket. He was told that the kitchen had a pump at one time, but the kitchen never had a working pump while he worked there. He felt something happen in his back while he lifted the barrel back up. He stated that he injured his back, wrists, leg and groin areas. The Plaintiff testified that he sued Captain Hasty because he issued the IOC but did not have a working pump in the kitchen. He noted that he reported the injury to his supervisor and was permitted to go to the infirmary. He was given a two day cell pass, and he stayed off from work for almost a month. He acknowledged he stayed off from work that long without authorization.

The Plaintiff wrote to Classification Chief Amy Jones and Warden Dennis Blevins on August 9, 2006. He complained about the kitchen and the "hostile work environment." He asserted that his work assignment was contrary to his medical restrictions. He testified that he had heat and humidity restrictions. Ms. Jones interviewed him and told him that his job was consistent with his medical restrictions. Warden Blevins was sued because he was aware of the Plaintiff's situation and did nothing. Warden Blevins also signed a response denying his Step 1 grievance.

The Plaintiff attempted to go back to work on August 9, 2006. He slipped while at work, but he caught himself on a railing. He reinjured his back. He waited for a supervisor to arrive to report the injury. Sgt. Jones eventually arrived, but he denied the Plaintiff's request to go to the infirmary. The Plaintiff went back inside and sat down. After about 45 minutes, Sgt. Jones came back in and

permitted the Plaintiff to go to the infirmary. However, Sgt. Jones also filed a disciplinary case against the Plaintiff for failing to timely report the injury. The Disciplinary Report and Hearing Record shows that he was found guilty and punished with a loss of recreation privileges for ten days. The Plaintiff asserted in his complaint that Sgt. Jones and Officer Smith were flippant about his health and safety.

On August 14, 2006, Captain Hasty asked the Plaintiff when he was coming back to work. He threatened the Plaintiff with a disciplinary case if he did not come back to work. Consequently, the Plaintiff returned to work and was assigned to the serving line. The Plaintiff testified that he thought the assignment was inappropriate due to his heat and humidity restrictions. He noted that it was hot and that there was steam around the serving line.

On September 11, 2006, the Plaintiff was wiping tables and dispensing cups when he started feeling bad. He told Officer Stager that he thought that his blood pressure was high and asked to go to the infirmary. Stager threatened the Plaintiff with a disciplinary case if he did not go back to work. Sgt. Jones made light of the situation and said everyone has high blood pressure. The Plaintiff went back to work and passed out. Medical personnel determined that his blood pressure was 164/101. He was transported to the infirmary. He was monitored for over an hour since they were concerned he was suffering a heart attack. His blood pressure had gone down to 150/98 when he was released.

The Plaintiff testified that he was given the heat and humidity medical restrictions when he was examined by a doctor at the Gurney Unit upon his arrival at the prison system. He subsequently learned that he had high blood pressure. He was assigned to the Ramsey Unit before he was transferred to the Powledge Unit. His last work assignment at the Ramsey Unit was a field utility squad. In mid-September, 2006, he saw a doctor, who added new medical restrictions. The new restrictions resulted in his reassignment to a field utility squad.

The Plaintiff was asked about why he believed he was the victim of retaliation. He testified that he filed a grievance about the incident on July 13, 2006. Sgt. Jones and other food service employees knew he filed the grievance and knew he was contemplating filing a lawsuit. He testified that he did not know why Sgt. Jones would not allow him to go to the infirmary, but the only reason he could think of was the grievance.

Warden Pratt testified under oath that the kitchen should have had a pump. Pumps are used in the kitchen at Warden Pratt's Unit. He added that three inmates roll and tilt barrels, as opposed to just one inmate.

Nurse Hughes testified under oath from the Plaintiff's original medical records. She noted that he was seen by nurses on July 18, 2006; July 24, 2006; August 5, 2006; August 9, 2006; and September 8, 2006. Dr. Clayton examined him on September 15, 2006. Dr. Clayton added the new restrictions at that time. A notation was made that the Plaintiff suffered from back pain, but he did not have any major problems such as a bulging disc. X-rays were normal. The Plaintiff's blood pressure was elevated, and he was assigned to a chronic clinic for high blood pressure. His blood pressure problems are being treated with medication. Nurse Hughes offered her opinion that heat and humidity restrictions should not keep an inmate from being assigned to the kitchen, including the serving line. She thought the restrictions would keep him from being assigned to work in places like the laundry. She testified that heat and humidity restrictions are added if an inmate has asthma, is on psychotropic drugs or has a history of strokes or heat related problems.

The Plaintiff gave the Court permission to review his prison records. The medical records reveal that the Plaintiff was seen by Nurse Deupree on July 13, 2006. The Plaintiff told her that he had been injured while lifting a 55 gallon barrel. He reported pain in his low back and groin areas. She noted normal joints and a full range of motion. His blood pressure was 151/93. She prescribed a cold

4

pack for the first 24 hours and warm moist heat after that. Instructions were given to provide him with either Acetaminophen or Ibuprofen. Nurse McDaniel issued the same protocol after examining him on July 18, 2006. Nurse Cashmere examined him on July 24, 2006. The Plaintiff reported that his lower back and left wrist were still hurting and that Ibuprofen did not help. She referred the Plaintiff to a medical provider. Physicians Assistant Fortner issued an order for x-rays on August 7, 2006. X-rays were made of the Plaintiff's lumbar spine. Dr. Gonzalez concluded that the lumbar spine was within normal limits. Nurse Roddy saw the Plaintiff after he slipped on August 9, 2006. She noted that x-rays had been ordered. She noted that the Plaintiff had been given Naproxen for back pain. An ice pack was also ordered. Nurse McDaniel examined the Plaintiff on September 8, 2006. The Plaintiff told her about his injuries on July 13, 2006, and August 9, 2006. He told her Naproxen was not helping his pain. He was concerned that his blood pressure had remained elevated. It was 167/98 at that time. She noted that his x-rays were within normal limits. She referred him to a Physicians Assistant. On September 11, 2006, Nurse Albritton also referred him to a medical provider.

Dr. Clayton examined the Plaintiff on September 15, 2006. The Plaintiff told him about injuring his back while lifting the barrel. He stated that his back was still hurting and that he was having radiation of pain to his left leg. The Plaintiff reported no previous history of back problems and no bowel or bladder dysfunction. Dr. Clayton observed the Plaintiff ambulating well. He was able to stand and sit without difficulty. He noted a decreased range of motion but no motor or sensory defects. His analysis was Lumbar Syndrome. He added new medical restrictions for six months for sedentary work only, no lifting over ten pounds, and no bending at the waist.

The Plaintiff's medical restrictions ("HSM-18") on September 18, 2006, specified sedentary work only, no lifting over ten pounds, no bending at the waist, no climbing, no temperature extremes

and no humidity extremes. The HSM-18 was signed by Physicians Assistant Fortner. The Plaintiff's classification records show that he was assigned to Utility Squad #1 on the same day. The new job assignment was signed by Amy Jones. The same work restrictions were kept in place in a HSM-18 dated January 10, 2007. The sedentary work only restriction was lifted on April 10, 2007.

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001).

The evidence in the present case reveals that the Plaintiff has had medical problems. He was diagnosed as having high blood pressure and Lumbar Syndrome. The Plaintiff also noted that he had abnormal EKGs. Even though the Plaintiff's problems required medical attention, his problems were not so severe that they could be described as an excessive risk to his health or safety thereby triggering a duty on the part of the Defendants not to be deliberately indifferent to a serious medical needs. *See Calhoun v. Hargrove*, 312 F.3d 730, 735 (5th Cir. 2002) (noting that a medical emergency occurs when the systolic reading (top number) reaches the threshold of 210); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992) (continuing back pain is unpleasant but its existence does not in and of itself demonstrate that a constitutional violation occurred). Even though the Plaintiff's medical problems were not severe, kitchen personnel were responsive to his medical needs when such needs became apparent. He was sent to the infirmary after he hurt his back on July 13, 2006. Even though he was given only a two day cell pass, kitchen personnel did not file disciplinary charges against him because he failed to return to work until August 9, 2006. He was eventually sent to the infirmary after he reinjured his back on August 9, 2006. He was sent to the infirmary after he fainted on September 11, 2006. The facts as attributed to the Defendants do not rise to the level of deliberate indifference.

The Plaintiff's complaint placed somewhat great emphasis on the failure of kitchen personnel to immediately send him to the infirmary on August 9 and September 11. A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). *See also Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). The facts as alleged, however, do not give rise to an inference of deliberate indifference. Moreover, the Plaintiff did not experience substantial harm due to any delays.

7

The Plaintiff also complained that Captain Hasty did not order a pump for the kitchen. Such failure at most amounted to negligence. It is well settled that negligence on the part of prison officials does not give rise to civil rights claims. *See Farmer v. Brennan*, 511 U.S. at 835; *Daniels v. Williams*, 474 U.S. 327 (1986); *Graves v. Hampton*, 1 F.3d 315, 319-320 (5th Cir. 1993). Moreover, to the extent that the failure to provide a pump may have violated a prison rule, Captain Hasty's violation of a prison rule, without more, does not state a constitutional violation. *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986). An assertion that prison officials failed to follow departmental regulations must, on its own merit, state a constitutional claim. *See Balli v. Haynes*, 804 F.2d 306, 308 (5th Cir. 1986). *See also Levitt v. University of Texas at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985) (The failure to follow regulations "may constitute a breach of contract or violation of state law, but unless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation"). The claims against Captain Hasty did not rise to the level of a constitutional violation.

The Plaintiff also complained about his job assignments in the kitchen. "Any unjustified refusal to follow the established work regime is an invitation to sanctions." *Mikeska v. Collins*, 900 F.2d 833, 837 (5th Cir. 1990), *modified*, 928 F.2d 126 (5th Cir. 1991). On the other hand, if prison officials knowingly assign an inmate to a job they realize may significantly aggravate a serious physical ailment, then such a decision would constitute deliberate indifference to serious medical needs. *Jackson v. Cain*, 864 F.2d at 1246. An inmate has a basis for a deliberate indifference claim where a prison official purportedly knew about a four hour medical work restriction but still forced the inmate to work long hours, which raised his blood pressure to dangerously high levels. *Calhoun v. Hargrove*, 312 F.3d at 734-35. However, a mere disagreement about a work assignment does not amount to deliberate indifference. *See Douglas v. McCasland*, 194 Fed. Appx. 192 (5th Cir. 2006); *Freeman*

*v. Alford*, 48 F.3d 530 (5th Cir. 1995).  Moreover, in order to succeed on a civil rights claim, the Plaintiff must show that his job assignment significantly aggravated a serious physical ailment. *Jackson v. Cain*, 864 F.2d at 1246-47.  The Plaintiff's belief that his assignment to the kitchen shows only a disagreement, as opposed to deliberate indifference.  Moreover, he has not shown that his job assignment to the kitchen aggravated a serious physical ailment.  His complaint about his assignment did not amount to a violation of his constitutional rights.

The Plaintiff also complained that Warden Blevins failed to take steps to help him.  In order to successfully plead a cause of action against a defendant in a civil rights case, a plaintiff must enunciate a set of facts that illustrate the defendant's participation in the alleged wrong.  *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).  Warden Blevins did not participate in any alleged acts of misconduct.  The only other way he could possibly be implicated in these claims is through his supervisory capacity.  Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory.  A supervisor may be held liable if either of the following exists:  (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations.  *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987).  Neither condition is satisfied.

The Plaintiff also complained that Warden Blevins denied his grievance.  Congress requires inmates to exhaust their "administrative remedies as are available . . . ." 42 U.S.C. § 1997e(a).  A prison system is not required to establish grievance procedures, and inmates do not have a basis for a lawsuit because a prison system has not established grievance procedures or fails to adhere to it.  42 U.S.C. § 1997e(b).  The Fifth Circuit has made it clear that inmates do not have a basis for a meritorious civil rights lawsuit just because they are unhappy with grievance procedures:

9

>Geiger does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

*Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Congress established the exhaustion requirement to give prisons and jails the first opportunity to address complaints by inmates, but inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance procedures. The Plaintiff does not have a basis for a § 1983 just because Warden Blevins denied a grievance.

Finally, the Plaintiff alleged that he was the victim of retaliation. He noted that kitchen personnel knew about his grievance. The only explanation he had for their failure to immediately send him to the infirmary was his grievance and their knowledge that he was contemplating a civil rights lawsuit. To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). For example, officials may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d at 1249. A plaintiff must allege facts showing that a defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). He must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997); *Jones v. Greninger*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). Moreover, he must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996).

The Plaintiff's claim that he was the victim of retaliation was based on supposition. Stated differently, he was unable to come up with any other explanation as to why he was not immediately sent to the infirmary. On the other hand, it could have been that it did not appear that he had an immediate serious medical need for medical care. He has not shown that "but for" a retaliatory intent, kitchen personnel would not have delayed sending him to the infirmary or that Sgt. Jones would not have filed a disciplinary case against him for failing to timely report a work related injury. The retaliation claim is conclusory. Furthermore, the Fifth Circuit has required that inmates alleged more than just a *de minimis* act in order to proceed on a retaliation claim. *Morris v. Powell*, 449 F.3d 682 (5th Cir. 2006), *cert. denied*, 127 S.Ct. 596 (2006). A delay in sending an inmate to the infirmary does not rise to the level of a more than *de minimis* act.

In conclusion, the facts as alleged by the Plaintiff do not provide a basis for a potentially successful civil rights lawsuit. The complaint fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is accordingly

**ORDERED** that the complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). All motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **25** day of **May, 2007.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE